IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID MCNAIR | * | |
| | * | |
| v. | * | Civil Case No. GLR-17-2124 |
| | * | |
| COMMISSIONER, SOCIAL SECURITY[1] | * | |
| | * | |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). [ECF No. 4]. I have considered the parties' cross-motions for summary judgment, and Mr. McNair's Response. [ECF Nos. 18, 21, 22]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Social Security Administration ("SSA") if it is supported by substantial evidence and if the SSA employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that the Court deny Mr. McNair's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

Mr. McNair applied for Disability Insurance Benefits ("DIB") on January 9, 2013, alleging a disability onset date of May 6, 2011. (Tr. 180-86). His application was denied initially and on reconsideration. (Tr. 67-79, 81-92, 96-100, 102-03). An Administrative Law Judge ("ALJ") held a hearing on December 17, 2015, at which Mr. McNair was represented by counsel. (Tr. 27-66). Following the hearing, the ALJ determined that Mr. McNair was not

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

disabled within the meaning of the Social Security Act. (Tr. 6-26). The Appeals Council ("AC") denied Mr. McNair's request for further review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. McNair suffered from the severe impairments of "spine disorders, diabetes mellitus, disorders of the parathyroid gland, major joint dysfunction, obesity, affective disorder, and post-traumatic stress disorder." (Tr. 11). Despite these impairments, the ALJ determined that Mr. McNair retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except he can stand for up to one hour and sit for up to one hour and can alternate between the two positions throughout the workday. The claimant can occasionally climb ramps or stairs; occasionally climb ladders, ropes, scaffolds; occasionally balance; and frequently stoop, kneel, crouch, and crawl. He can frequently reach with his left, dominant upper extremity; he can never reach overhead with his left upper extremity. He can have occasional exposure to extreme cold and extreme heat, and occasional exposure to hazards such as moving machinery and unprotected heights. He is limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions with few, if any, work-place changes.

(Tr. 14). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. McNair could perform jobs existing in significant numbers in the national economy, and that, therefore, he was not disabled. (Tr. 21-22).

On appeal, Mr. McNair raises several arguments, including that: (1) the ALJ failed to properly consider the effects of his obesity in the Listing analysis; (2) the ALJ failed to properly consider the effects of his obesity in his RFC assessment; (3) the ALJ erred in his determination that Mr. McNair's affective disorder did not meet or equal the criteria of any Listing; and (4) the ALJ erroneously determined that Mr. McNair's testimony was not credible. These arguments lack merit for the following reasons.

First, Mr. McNair argues that the ALJ failed to properly consider the effects of morbid obesity in his Listing analysis and RFC assessment. Pl. Mot. 5-7. Social Security Regulation

02-1p ("SSR 02-1p") provides that the ALJ will consider obesity in determining whether the claimant has a medically determinable impairment, whether the claimant's impairment is severe, whether the claimant's impairment meets or equals the criteria of any listings, and whether the claimant's impairment prevent him from doing past relevant work or other work existing in significant numbers in the national economy. SSR 02-1p, 2002 WL 34686281, *3 (S.S.A. Sept. 12, 2002). Importantly, the claimant bears the burden to provide evidence of the functional limitations caused by his severe impairments, including obesity. *Hancock v. Astrue*, 667 F.3d 470, 471-72 (4th Cir. 2012) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)); *see also Thompson v. Comm'r of Soc. Sec.*, No. TJS-12-3331, 2014 WL 992528, at *2 (D. Md. Mar. 12, 2014) ("The claimant carries the burden of showing how his obesity affects his ability to perform work-related functions.") (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)).

In the instant case, the ALJ adequately assessed Mr. McNair's obesity during the Listing analysis and RFC assessment. In the Listing analysis, the ALJ began by noting that Mr. McNair "has been diagnosed with obesity with a BMI of 49.39." (Tr. 12). He then explained that he "considered the combination of the claimant's obesity with the other impairments, pursuant to [SSR] 02-01p. . . . [and] considered the added impact the claimant's obesity has on his symptoms." *Id.* The ALJ concluded that he "d[id] not find that the added effect causes the claimant's impairments to meet or equal a listing." *Id.* In doing so, the ALJ cited to Mr. McNair's medical records describing Mr. McNair's mental status as "[a]lert," his general appearance as "[w]ell groomed," his orientation as "[o]riented X3," and his build and nutrition as "[w]ell nourished and [w]ell developed." (Tr. 683). The records cited by the ALJ also reveal that Mr. McNair exhibited no negative symptoms related to his respiratory, cardiovascular,

gastrointestinal, musculoskeletal, or neurological health. *Id.*

Furthermore, the ALJ cited to medical records and discussed the effects of obesity on Mr. McNair's RFC elsewhere in the decision. *See* (Tr. 15-20). The ALJ, for example, included a sit-stand option in Mr. McNair's RFC "to account for the limitations the claimant alleged due to his knee and obesity issues . . . ." (Tr. 20). Notably, Mr. McNair has not identified or cited to evidence of any particular limitations that are caused by his obesity. *See McNeill v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-2307, 2015 WL 5157493 , at *2 (D. Md. Aug. 31, 2015) (holding that the ALJ adequately discussed the effects of the claimant's obesity in part because there is "no indication in the record that [the claimant's] obesity would medically equal any other listing"); *see also Brown v. Astrue*, Civil No. JKS-09-1792, 2011 WL 129006, at *2 (D. Md. Jan. 14, 2011) (denying remand where the claimant failed to identify any evidence suggesting that his obesity caused greater limitations than the ALJ assigned). Accordingly, the ALJ properly evaluated Mr. McNair's obesity in the Listing analysis and the RFC assessment.

Next, Mr. McNair contends that the ALJ erred in his conclusion that his mental impairments did not meet or equal the criteria of any listing and "substitute[d] his own judgment for that of a mental health professional." Pl. Mot. 7-8. Specifically, Mr. McNair appears to argue that the ALJ improperly discounted the opinions of his therapist, William Cullison, in determining that Mr. McNair's mental impairment did not meet or medically equal the criteria set forth by Listing 12.04. *Id.* At step three of the sequential evaluation, the ALJ determines whether the claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et seq.* pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00. Relevant to the instant case, Listing 12.04 consists of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists

of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* §§ 12.00, 12.04. If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1620a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three functional areas: none, mild, moderate, marked, or extreme. *Id.* § 404.1620a(c)(4). To satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* § 12.00(C).

Here, the ALJ provided substantial evidence to support his conclusion that Mr. McNair's mental impairment did not meet or medically equal the criteria set forth in Listing 12.04. The ALJ found that Mr. McNair had "mild" restriction in daily living activities; "moderate" difficulties in social functioning and concentration, persistence, or pace; and no episodes of decompensation. (Tr. 13-14). In doing so, the ALJ cited to and discussed the evidence of record, including Mr. McNair's own statements regarding his daily activities and symptoms.

5

Notably, the ALJ observed that Mr. McNair "cooks dinner for his family, can dress and bathe himself, drives places, and shops for groceries," as well as "watches 3-4 hours of television daily and reads books." *See* (Tr. 13) (citing (Tr. 448-49)). The ALJ further noted that Mr. McNair regularly attends church, and "talks with others and attends social gatherings." (Tr. 13); *see also* (Tr. 448) (psychiatric disability assessment, noting that Mr. McNair "goes to family gatherings with his wife and daughter as well as out to a restaurant."); (Tr. 226) (Mr. McNair's function report, in which Mr. McNair stated that he goes to church, drives his daughter to school, goes shopping, takes his wife to work, and visits family and friends). Later, in his RFC assessment, the ALJ also evaluated the opinion of Mr. Cullison. (Tr. 19). Assigning significant weight to Mr. Cullison's findings, the ALJ observed that Mr. Cullison found Mr. McNair to have "intact cognitive functioning and short/long-term memory," and that he was "fully oriented with fair insight, judgment, and behavior." *Id.* Mr. Cullison's findings also revealed that, despite his non-compliance with medical treatment, Mr. McNair had "'fair' status with mood at 4 out of 10 and anxiety at 6 out of 10, with minimal improvement thus far." *Id.* Thus, in light of the ALJ's extensive discussion of and citation to the evidence of record, the ALJ provided substantial evidence to support his conclusion that Mr. McNair's mental impairment did not meet or medically equal Listing 12.04.

Finally, Mr. McNair argues that the ALJ erroneously determined that his testimony was not fully credible. Pl. Mot. 9. In evaluating a claimant's symptoms, the ALJ must follow a two-step process. SSR 16-3P, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016). First, the ALJ must consider whether the claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* Second, the ALJ must "evaluate the intensity and persistence of those symptoms to

determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In doing so, the ALJ will "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Contrary to Mr. McNair's argument, the ALJ properly evaluated the severity of Mr. McNair's alleged symptoms. The ALJ began by summarizing Mr. McNair's alleged symptoms and testimony in great detail. *See* (Tr. 15-16). The ALJ then found that Mr. McNair's testimony was "partially consistent with the medical evidence of record. . . . [and] only somewhat supports the alleged extent of the limitations caused by [Mr. McNair's] impairments as demonstrated by [his] medical evidence of record as a whole." (Tr. 15). In reaching his decision, the ALJ thoroughly discussed and cited to Mr. McNair's treatment records, daily living activities, and the various medical opinions on the record. (Tr. 16-20). For example, the ALJ found that Mr. McNair "ha[d] not demonstrated the need for a cane for ambulation," (Tr. 15), particularly in light of his treatment records that revealed "normal gait" and "unremarkable knee imaging," (Tr. 20). Additionally, with respect to his mental impairment, the ALJ concluded that Mr. McNair's mental health symptoms and related limitations "[we]re not as serious as alleged," in light of Mr. McNair's inconsistencies in treatment. (Tr. 21). Accordingly, the ALJ properly evaluated Mr. McNair's alleged symptoms and limitations, and I recommend that the ALJ's determination be affirmed.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 21];

7

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 18]; and

3. the Court order the Clerk to AFFIRM the case to the SSA for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: July 2, 2018 /s/
Stephanie A. Gallagher
United States Magistrate Judge